**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | Criminal Action No. 7:25-CR-02462 |
| | § | |
| JONATHAN MENDOZA-MARTINEZ, | § | |
| et al. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendants Jonathan and Jenith Mendoza-Martinez (collectively, the "Mendoza-Martinezes") and Veronica Aleman-Ramirez are charged with employing aliens without authorization to work in the United States at Jem Textile Recycling, a business in McAllen, Texas. They are also charged with encouraging unauthorized aliens to enter the United States and with conspiring to make one or more applications for admission into the United States containing false statements. In addition, several unauthorized aliens that were employed at Jem Textile Recycling are also charged with making one or more applications for admission into the United States containing false statements.

Pending before the Court are 11 Motions to Dismiss Indictment, (Dkt. Nos. 135, 152, 153, 156, 158, 159, 160, 161, 163, 165, 191). For the following reasons, the Court **DENIES** the Motions as to Counts 1–6 and 16 of the Indictment, (Dkt. No. 47), and **GRANTS** the Motions as to Counts 7–15. The Court also **ORDERS** the Government to elect which charge it intends to rely on within Count 16.

**I.    BACKGROUND**

On October 2, 2025, the Department of Homeland Security ("DHS") executed a search warrant at Jem Textile Recycling in McAllen, Texas. (Dkt. No. 14 at 2). At that

time, DHS identified over 10 employees present at the business who lacked authorization to work in the United States. (*Id.*).

DHS spoke with the Mendoza-Martinezes, the owners of the business, and Veronica Aleman-Ramirez, a manager. (*Id.*). Jonathan Mendoza-Martinez stated that he was working in the United States without employment authorization and that he was aware that some of his employees working at Jem Textile Recycling also lacked authorization to work in the United States. (*Id.*). In addition, he stated that Aleman-Ramirez was responsible for hiring employees for the company. (*Id.*). Jenith Mendoza-Martinez confirmed this and stated that the business (through Aleman-Ramirez) paid its 20–30 employees who lacked work authorization in cash. (*Id.*). Aleman-Ramirez stated that she and Jonathan Mendoza-Martinez oversaw the hiring for the business, that she did not request work-authorization documents from applicants, and that she paid employees in cash at Jonathan Mendoza-Martinez's direction. (*Id.*).

The Mendoza-Martinezes and Aleman-Ramirez were then arrested, (*see id.*), and a bench warrant was issued for several of the unauthorized employees, (Dkt. No. 51). On October 22, 2025, a grand jury returned an indictment ("the Indictment") charging the Mendoza-Martinezes and Aleman-Ramirez with five counts of encouraging an unauthorized alien to enter the United States; one count of conspiring, confederating, and agreeing to do the same; one count of hiring or continuing to employ unauthorized aliens; and one count of conspiring to knowingly make one or more applications for admission into the United States containing false statements in violation of 8 U.S.C. §§ 1324a(a)(1)(A)(iv), (a)(1)(A)(v)(I), (a)(1)(A), (a)(2), (f)(1), and 18 U.S.C. § 371. (*See*

*generally* Dkt. No. 47). Eight employees—Guadalupe Solis Cayetano, Alma Fuentes Moreno, Veronica Santiago Cruz, Gloria Perez Hernandez, Saib Ramses Hernandez Vaquero, Nancy Orta Carreon, Juana Castaneda Contreras, and Eduardo Zapata Lerma— were also charged with making one or more applications for admission into the United States containing false statements and with conspiring to do the same under 18 U.S.C. §§ 1546(a) and 371. (*Id.*).

All 11 defendants (collectively, the "Defendants") filed Motions to Dismiss the Indictment against them. (Dkt. Nos. 135, 152, 153, 156, 158, 159, 160, 161, 163, 165, 191). The Government filed two global responses addressing each of the Motions. (Dkt. Nos. 169, 170).

## II.  LEGAL STANDARD

"The purpose of an indictment is 'to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to involve the double jeopardy clause in any subsequent proceeding.'" *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Cluck*, 143 F.3d 174, 178 (5th Cir. 1998)). An indictment is sufficient if it "contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend." *Id.* When determining whether an indictment states an offense, "the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)). Federal Rule of Criminal Procedure 7(c)(1) states that an indictment "must be a plain, concise, and definite written statement

of the essential facts constituting the offense charged." "An indictment is sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against him and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Montemayor*, 703 F.2d 109, 117 (5th Cir. 1983).

## III.    DISCUSSION

### A.    COUNTS 1–6

The Mendoza-Martinezes and Aleman-Ramirez argue that Counts 1–6—charging them with violating 8 U.S.C. § 1324(a)(1)(A)(iv) (Counts 2–6) and 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Count 1)—are unconstitutionally vague and lack specificity. (Dkt. No. 156 at 6–7); (Dkt. No. 161 at 4–5); (Dkt. No. 165 at 5–6). According to Defendants, because the Counts are just restatements of Section 1324(a)(1)(A)(iv) and (v)(I) and do not provide any factual basis for the charges, they are unable to prepare their defenses. (Dkt. No. 156 at 6–7); (Dkt. No. 161 at 4–5); (Dkt. No. 165 at 5–6). Further, they allege that Section 1324(a)(1)(A)(iv) requires proof of knowledge and intent, elements which Defendants claim are absent from the Indictment. (Dkt. No. 156 at 6–7); (Dkt. No. 161 at 4–5); (Dkt. No. 165 at 5–6). Defendants also argue that "mere employment"—the conduct they contend underlies Counts 1–6—does not violate Section 1324(a)(1)(A)(iv). (Dkt. No. 156 at 6–7); (Dkt. No. 161 at 4–5); (Dkt. No. 165 at 5–6 (citing *United States v. Anderton*, 901 F.3d 279, 284 (5th Cir. 2018)).

The Court is unpersuaded. "An indictment need not list every particular of the offense." *United States v. Richard*, 775 F.3d 287, 292 (5th Cir. 2014). An indictment is

"generally sufficient 'when the charge tracks the governing statute as long as the statutory language unambiguously sets forth all essential elements.'" *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991) (quoting *United States v. Beebe*, 792 F.2d 1363, 1366 (5th Cir. 1986)); *see also United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003); *United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017). "[I]t need not set out the 'evidentiary details by which the government plans to establish' the defendant's guilt." *Moody*, 923 F.2d at 351 (quoting *United States v. Gordon*, 780 F.2d 1165, 1172 (5th Cir. 1986)).

Counts 2–6 are restatements of Section 1324(a)(1)(A)(iv), alleging that Defendants "did encourage and induce an alien . . . to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry and residence in the United States was in violation of law." (Dkt. No. 47 at 2–3). This is unambiguous language that sets forth all essential elements of the crime: (1) encouraging and inducing an alien, (2) to come to, enter, and reside in the United States, (3) knowing and in reckless disregard of the fact that such entrance was in violation of law. Further, each specific Count names an alleged alien that the Government believes Defendants encouraged and induced to enter into the United States. (*Id.*). While the Government was not required to list the factual basis for the Counts in the indictment to properly inform Defendants of the charges, *see Moody*, 923 F.2d at 351, listing these names provides Defendants with a factual basis sufficient to allow them to prepare a defense.

Defendants' arguments that the Indictment is unduly vague because it does not allege a knowledge or intent element or acts beyond "mere employment" also fails. The

Supreme Court has clarified that the "encourages or induces" language of Section 1324(a)(1)(A)(iv) incorporates the essential *mens rea* requirement.

> [T]here is a simple explanation for why "encourages or induces" is not modified by an express *mens rea* requirement: There is no need for it. At the risk of sounding like a broken record, "encourage" and "induce," as terms of art, carry the usual attributes of solicitation and facilitation—including, once again, the traditional *mens rea*. . . . [T]he omission of the unnecessary modifier is certainly not enough to overcome the "presumption of scienter" that typically separates wrongful acts "from 'otherwise innocent conduct.'"

*United States v. Hansen*, 599 U.S. 762, 780, 143 S.Ct. 1932, 1945, 216 L.Ed.2d 692 (2023) (quoting *Ruan v. United States*, 597 U.S. 450, 458, 142 S.Ct. 2370, 2377, 213 L.Ed.2d 706 (2022)). Therefore, it is not necessary that the Government alleges a knowledge or intent element in the Indictment.

The Government also need not allege that Defendants did more than merely employ aliens as employment alone may constitute a violation of Section 1324(a)(1)(A)(iv). *See United States v. Louisiana Home Elevations, LLC*, No. 2:11-CR-00274, 2012 WL 1033619, at *6 (E.D. La. Mar. 27, 2012) ("[T]he fact that employment plus 'something more' is sufficient to constitute a harboring charge [as some courts have ruled] does not necessarily compel the conclusion that employment alone is *insufficient*." (emphasis in original)); *see also United States v. Acambaro Mex. Rests., Inc.*, No. 5:08-CR-50009, 2008 WL. 2079147, at *2 (W.D. Ark. May 15, 2008).[1]

---

[1] The Court also notes that Defendants' briefs initially complain that the Government has provided no factual basis for Counts 1–6 but then state that "[p]resumably, the Government intends to prove [that Defendants violated Sections 1324(a)(1)(A)(iv) and (a)(1)(A)(V)(I)] by offering [aliens] employment." (Dkt. No. 156 at 6); *see also* (Dkt. No. 161 at 4–5); (Dkt. No. 165 at
(continue)

Defendants' arguments regarding the conspiracy charge in Count 1 are likewise unavailing. When an indictment charges a defendant with conspiracy, it "need not allege every overt act committed in furtherance of the conspiracy." *United States v. Lam Lek Chong*, 544 F.2d 58, 63 (2d Cir. 1976) (citing *Wong Tai v. United States*, 273 U.S. 77, 81, 47 S.Ct. 300, 302, 71 L.Ed.2d 545 (1927)). Courts have upheld conspiracy indictments that "track the language of a statute and, in addition, do little more than state time and place in approximate terms." *Id.*; *see also United States v. Bragg*, No. 91-7044, 1992 WL 366674, at *3 (5th Cir. Nov. 30, 1991) (unpublished) ("[W]e measure the sufficiency of the indictment with regard to the elements of a conspiracy to violate federal law rather than with regard to the elements [of the underlying crime].").

Count 1 tracks the language of Section 1324(a)(1)(A)(v)(I) and alleges that Defendants conspired to commit violations of Section 1324(a)(1)(A)(iv). (Dkt. No. 47 at 1). It also lists the time and place that the conspiracy allegedly occurred: "From on or around July 2025 until on or about October 2, 2025, in the Southern District of Texas." (*Id.*). This is enough information to apprise Defendants of the charges against them and to allow them to prepare a competent defense. As such, their Motions to Dismiss as to Counts 1–6 are denied.[2]

---

5–6). This, in combination with the information provided in the Indictment, would indicate that Defendants are aware of the factual basis for these Counts and have at least some knowledge for why the Government brought charges against them.

[2] Defendants also bring a First Amendment "as applied" challenge to Counts 1–6 alleging the Indictments lack specificity. (Dkt. No. 156 at 6); (Dkt. No. 161 at 5); (Dkt. No. 165 at 5). This argument fails because "the First Amendment does not protect all expression. Its guarantees yield to 'the few historic and traditional categories of expression long familiar to the bar.'" *United States v. Jubert*, 139 F.4th 484, 490 (5th Cir. 2025) (quoting *United States v. Alvarez*, 567 U.S. 709, 717, (continue)

**B.** **COUNTS 7–15**

Next, the Court considers Counts 7–15 of the Indictment, which charge all Defendants with violating 18 U.S.C. § 1546(a) or for conspiring to do the same under 18 U.S.C. § 371, or both. (Dkt. No. 47 at 6–9). To begin, the Court reviews the text of Section 1546(a).

### 1. <u>Statutory Interpretation</u>

The relevant part of Section 1546(a), paragraph four, states:

> Whoever knowingly makes under oath, or as permitted under penalty of perjury under [28 U.S.C. § 1746], knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document which contains any such false statement or which fails to contain any reasonable basis in law or fact [commits an offense.]

18 U.S.C. § 1546(a). As an initial matter, this language criminalizes two different acts: (1) knowingly making false statements in an application, affidavit, or other document, and (2) knowingly presenting any such application, affidavit, or other document containing any such false statement. *See United States v. Yong Ping Liu*, 288 F.App'x 193, 199 (5th Cir. 2008) ("The visa fraud statute [18 U.S.C. § 1546(a) paragraph four] requires a showing that the defendant 'knowingly' made or presented a 'false statement' in an application, affidavit, or other document required by the immigration laws." (citing 18 U.S.C. § 1546(a)); *see also United States v. Ashurov*, 726 F.3d 395, 398 (3d

---

132 S.Ct. 2537, 2544, 183 L.Ed.2d 574 (2012) (plurality opinion) (cleaned up)). "These categories include . . . speech integral to criminal conduct." *Id.*

Cir. 2013). While the Government asserts that paragraph four is not limited to these theories, (Dkt. No. 170 at 20–21), the Fifth Circuit's criminal pattern jury instructions support this understanding of Section 1546(a) by recommending alternative instructions depending on which theory is alleged in a complaint, *see* Fifth Circuit Pattern Jury Instructions (Criminal) § 2.67C (2024).

### a. Does the Presenting Clause Require Making a False Statement Under Oath?

Under the plain text of the making clause, a defendant must make the alleged false statement under oath (or under penalty of perjury). It is disputed, however, whether the presenting clause also requires the false statement presented in an application, affidavit, or other document to have been made under oath. (Dkt. No. 153 at 3–8);[3] (Dkt. No. 170 at 11–14). The three circuits that have addressed this issue, the Second, Third, and Fourth, have reached divergent conclusions. *Compare United States v. Khalje*, 658 F.2d 90, 92 (2d Cir. 1981) (holding that false statements need not be made under oath to violate Section 1546(a)'s presenting clause); and *United States v. Aborisade*, 163 F.4th 856, 864–65 (4th Cir. 2026), *petition for reh'g en banc filed*, No. 24-4466 (4th Cir. Feb. 12, 2026) (same); *with Ashurov*, 726 F.3d at 402 (holding that false statements must be made under oath to violate

---

[3] The Court cites only to Defendant Gloria Perez Hernandez's Motion for Defendants' arguments related to Counts 7–15 because hers is the most detailed. The other briefs contain the same material arguments.

Section 1546(a)'s presenting clause). The Court could find no Fifth Circuit precedent addressing this issue.[4]

In *Khalje*, the Second Circuit held that a defendant who had "presented an application for a visitor's visa to the American Consulate in Montreal in which he . . . falsely stated the purpose and length of his visit to the United States" violated Section 1546(a) despite not making the statement under oath. 658 F.2d at 91. The defendant argued that the "any such false statement" language in the presenting clause referred not only to the "any false statement with respect to a material fact" language in the making clause, but also the preceding oath-taking requirement. *Id* at 91–92. This argument was rejected by the Second Circuit, however, which held that "the phrase 'any false statement' in the presentment portion" referred only to "any false statement with respect to a material fact.'" *Id.* According to the Second Circuit,

> This construction carries out the apparent Congressional purpose of penalizing both those who swear to materially false statements in visa applications and those who present materially false statements in such applications, whether or not the latter swear to such statements. We can see no reason why Congress would have prohibited presentment of materially false statements only when such statements were made under oath, either by the presenter or third party.

---

[4] One Fifth Circuit case, *United States v. Ongaga*, does state that making a false statement under oath is an element of visa fraud under Section 1546(a). 820 F.3d 152, 164–65 (5th Cir. 2016). However, the defendant there was charged under the making clause, not the presenting clause. *Id.* Additionally, while the Fifth Circuit pattern jury instructions seem to imply an oath-taking requirement for the presenting clause, *see* Fifth Circuit Pattern Jury Instructions (Criminal) § 2.67C (2024), those instructions are not binding law, *see Vasquez v. Tristar Prods., Inc.*, No. 1:15-CV-00108, 2017 WL 7038197, at *5 (S.D. Tex. June 6, 2017) (collecting cases).

*Id.*  The Fourth Circuit agreed with *Khalje* and held that "[t]he knowingly presents clause achieves Congress' intent to punish those who present false statements to the government, whether those statements are sworn or not."  *Aborisade*, 163 F.4th at 865.

The Third Circuit disagreed with *Khalje* and held that the presenting clause incorporated the oath-taking requirement.  *Ashurov*, 726 F.3d at 401–402.  In that case, a defendant charged under paragraph four argued that because the alleged false statement made in an I-20 Form submitted for an adjustment of his immigration status—false statements that his sponsoring school required him to pursue a "full course of study"—were not made under oath, he could not be found guilty under the presenting clause.  *Id.* at 397.  To resolve the issue, the Third Circuit undertook a statutory analysis that considered several canons of statutory construction as well as Section 1546(a)'s structure, history, and purpose.  *Id.* at 398–402.  Ultimately, the Third Circuit held that paragraph four of Section 1546(a) was "needlessly convoluted" and created an ambiguity regarding whether the presenting clause contained an oath-making requirement.  *Id.* at 402.  As a result, it applied the rule of lenity and resolved the dispute in favor of the defendant, concluding that the presenting clause required alleged false statements to have been made under oath.  *Id.*  In reaching this conclusion, the Third Circuit rejected *Khalje* and its analysis of the presenting clause because the Second Circuit failed to "tackle any of the difficult interpretive hurdles" discussed in *Ashurov*.  *Id.*

After careful consideration, the Court concludes that the presenting clause in paragraph four of Section 1546(a) does not incorporate the oath-taking requirement found in the making clause.  Like the Third Circuit in *Ashurov*, the Court reaches its

conclusion after examining two textual canons of construction: the nearest-reasonable-referent canon[5] and the rule against surplusage.

Under the nearest-reasonable-referent canon, "[w]hen the syntax involves something other than a parallel series of nouns or verbs, a prepositive or postpositive modifier normally applies only to the nearest reasonable referent."  Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 152, 434 (2012).  Applied to Section 1546(a), the modifying phrase "any *such* false statement" in the presenting clause would refer to the nearer "any false statement with respect to a material fact," rather than the farther "knowingly makes under oath."  This would indicate that the presenting clause does not require a false statement knowingly presented to have been made under oath.  Such a reading would also be grammatically consistent because "the words 'under oath' in the 'making' clause . . . characterize and qualify the *action itself* that the statute punishes, 'knowingly makes.'"  *Ashurov*, 726 F.3d at 398.  It does not qualify the object of that clause, "any false statement with respect to a material fact."  *See id.*  The canon therefore leans in favor of the Government.

Turning to the rule against surplusage, the Court is unconvinced, unlike the Third Circuit, that it militates against the conclusion reached via the nearest-reasonable-referent canon.  The surplusage rule states that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or

---

[5]     *Ashurov* refers to the rule of the last antecedent instead of the nearest-reasonable-referent canon, 726 F.3d at 398–99, however, this is a common misnomer according to Garner and Scalia, *see* Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 152-53, 432 (2012).

insignificant." *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 294 (5th Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314, 129 S. Ct. 1558, 1566, 173 L.Ed.2d 443 (2009)).

*Ashurov* held that a reading of Section 1546(a) that does not apply the oath-taking requirement to the presenting clause would render that requirement "superfluous" because an individual that makes a false statement and then presents that statement would always be prosecuted under the less-restrictive presenting clause. 726 F.3d at 399–400. True, the oath-taking requirement would be irrelevant to a presenter in that circumstance (they could be prosecuted for knowingly presenting a false statement regardless of whether it was made under oath), however, *Ashurov*'s conclusion fails to adequately consider that paragraph four also covers instances in which a different individual from the one making the false statement presents it. *See, e.g.*, *Yong Ping Liu*, 288 F.App'x at 195 (affirming the 1546(a) conviction of a defendant that knowingly presented a false statement in a visa application made by another individual to U.S. Citizen and Immigration Services). In such a situation, the oath-taking requirement would not be inoperable surplusage; the maker of the false statement could only be charged if they made the false statement under oath and could not be charged otherwise. The fact that part of a statute may be inoperable in some applications does not mean that part is surplusage when there are other applications in which it is operable. The rule against surplusage therefore also supports the Government's interpretation of paragraph four.

The structure of Section 1546(a) likewise supports the Government's interpretation. Section 1546(a) as a whole criminalizes visa fraud. 18 U.S.C. § 1546(a)

(titled "Fraud and misuse of visas, permits, and other documents"); *Yong Ping Liu*, 288 F.App'x at 197 n.2 (labelling Section 1546(a) as "the visa fraud statute"). Applying the oath-taking requirement only to the making clause is consistent with Section 1546(a)'s structure because doing so would allow the statute to more effectively criminalize fraudulent visa acts than if the requirement also applied to the presenting clause. Paragraph four penalizes both those who swear to materially false statements in visa applications and those who present materially false statements in those applications, regardless of whether the latter swear to such statements. "[T]he law does not generally punish people for lying unless they expressly acknowledge a legal duty not to do so." *Ashurov*, 726 F.3d at 400. Therefore, as the Courts in *Khalje* and *Aborisade* argued, it is consistent for an individual to only be punished for making a false statement when made under oath. *Khalje*, 658 F.2d at 91; *Aborisade*, 163 F.4th at 865. It is also consistent for an individual who *knowingly presents* a false statement to be punished regardless of whether the false statement was made under oath. *Khalje*, 658 F.2d at 91; *Aborisade*, 163 F.4th at 865. Such an individual is not guilty of unsworn lying, but of a fraudulent action that relies on that unsworn lie. The Court's reading of paragraph four gives effect to this understanding. The Court therefore concludes that the presenting clause in paragraph four of Section 1546(a) does not contain an oath-taking requirement.

        b.    <u>Does Paragraph Four of Section 1546(a) Require a False Statement to be Made in a Written Document?</u>

The next dispute regarding paragraph four's meaning is whether the term "application" in "application, affidavit, or other document" refers to a written document

or a physical attempt to enter into the United States. Defendants assert that the term refers only to written documents and not an "application for admission" as used in other statutes such as 8 U.S.C. § 1101(a)(4) and 8 C.F.R. § 214.1(a)(3)(i). (*See, e.g.*, Dkt. No. 153 at 13). The Government argues the opposite. (*See* Dkt. No. 170 at 2–11). To support their argument, Defendants cite to *United States v. Jabateh*, another Third Circuit case holding that "application" in Section 1546(a) does not refer to oral statements, only to written documents. 974 F.3d. 281, 295 (3d. Cir. 2020); (Dkt. No. 153 at 6–7).

The Court finds this case to be persuasive authority that "application" in paragraph four refers only to written documents. Undertaking an extensive statutory construction analysis, *Jabateh* begins by acknowledging that the definition of "application" when Section 1546(a) was originally drafted generally included making a request both orally and by writing. *Id.* at 292–93. Despite this, paragraph four narrowed this definition by including the term within a three-item series: "application, affidavit, or other document." *Id.* at 293 ("Congress's use of the phrase 'or other document' then modifies both 'application' and 'affidavit' to make them similar in scope, as '[w]ords in a list are generally known by the company they keep.'" (quoting *Logan v. United States*, 552 U.S. 23, 31, 128 S.Ct. 475, 482, 169 L.Ed.2d 432 (2007))).

This definitional narrowing is further evidenced by the section title of the law as originally drafted in 1924 ("Offenses in Connection with Documents") and the updated title after the statute was amended in 1952 ("Fraud and misuse of visas, permits, and other entry documents"). *Id.* at 293, 295-96. Moreover, examination of the original 1924 statute reveals that other uses of "application" refer specifically to written forms. *Id.* at

293–94 (noting that a different section of the statute requiring that "[e]very immigrant applying for an immigration visa shall make an application therefor in duplicate" makes it unlikely that "application" in paragraph four "mean[s] anything besides written forms").[6]

The Government attempts to rebut *Jabateh* by pointing out that the Third Circuit case concerned "oral statements made in an interview with U.S. officials as part of an application for permanent residency" and not "an alien applying for admission at a port of entry" as in this case. (Dkt. No. 170 at 3–4). Instead, the Government argues that *United States v. Carrillo-Colmenero*, a Fifth Circuit case, is binding authority that "by its express terms [Section] 1546 applies to a person who attempts to be admitted to the United States . . . and is not limited to persons applying for entry-type documents." 523 F.2d 1279, 1283 (5th Cir. 1975); (Dkt. No. 170 at 2). The Court is not persuaded.

First, *Carrillo-Colmenero* is not binding on this question. That case analyzed paragraph three of Section 1546(a), which criminalizes impersonating another when applying for admission into the United States, and held that it is not limited only to cases where a person impersonates another when applying for entry-type documents. *Carrillo-Colmenero*, 523 F.2d at 1283. The Fifth Circuit did not decide the meaning of "application" in paragraph four, and the Court is unable to find any case from this circuit that does so. Given the above analysis of paragraph four, the Court rejects the argument that

---

[6] The Third Circuit also noted that "the focus of the visa process [when the statute was passed] was the information in the application, supported by accompanying documentation. . . . And it was a false statement *within* that 'application, affidavit, or other [required] document' that could trigger criminal penalty." *Id.* at 294 (emphasis in original).

"applying" as used in paragraph three and "application" as used in paragraph four carry identical meanings.[7]

Second, the Government's attempt to rebut *Jabateh* relies on a distinction without a difference. It is true that the criminal act here is different than the one in *Jabateh*. However, the Third Circuit's analysis of "application" in paragraph four is a determination of "the ordinary and best reading of § 1546(a)." *Jabateh*, 974 F.3d at 287. This analysis was not dependent on the specific factual circumstances of that case, but on paragraph four's "ordinary meaning . . . at the time Congress enacted the statute." *Id.* at 292 (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 277, 138 S.Ct. 2067, 2070, 201 L.Ed.2d 490 (2018)). The Court therefore finds no issue in relying on *Jabateh*'s meticulous statutory analysis or in holding that "application" in paragraph four refers to written documents such as visa applications.

## 2. **Application**

Having determined the meaning of Section 1546(a)'s paragraph four, the Court next addresses whether the Indictment against Defendants alleges a criminal act in violation of that statute. Counts 8–15 allege that Defendants Cayetano, Moreno, Cruz,

---

7 Much of the Government's Response on this point consists of atextual appeals to cases and other immigration-related statutes that describe aliens attempting to enter the United States as "applicants for admission" to prove that federal immigration law considers presenting oneself at a port of entry as constituting an application for admission. (*See* Dkt. No. 170 at 5–11 (further arguing that this understanding of U.S. immigration law means that Defendants violated Section 1546(a) by presenting a tourist visa in their "application for admission" at a port of entry despite intending to violate the terms of that visa by working in the United States)). These arguments fail to provide a valid textual rebuttal to the conclusion that the specific use of "application" in the three-item series in paragraph four, in context, refers to written documents. The Government provides no justification for why Section 1546(a) should be interpreted in a way that defies the original meaning of the statute. Its arguments are thus unconvincing.

Hernandez, Vaquero, Carreon, Contreras, and Lerma "did knowingly make one or more applications for admissions into the United States containing a false statement or failing to contain any reasonable basis in law or in fact, by presenting [their] B1/B2 visa[s], in violation of . . . Section 1546(a)." (Dkt. No. 47 at 6–9). Count 7 also charges those Defendants (plus the Mendoza-Martinezes and Aleman-Ramirez) with conspiring to do the same in violation of 18 U.S.C. § 371. (*Id.* at 6).

Defendants argue that these Counts charge them under the presenting clause of paragraph four for using their B1/B2 tourist visas to enter the United States (or for conspiring with other Defendants to do so) for the unlawful purpose of working after gaining admission. (Dkt. No. 153 at 17–20). This charge fails to state an offense under Section 1546(a), according to them, because it does not assert (1) that they presented a false statement that was made under oath, and (2) that the false statement was made in a written application. (*Id.*). Further, they claim that "Federal law does not make it a crime for an alien to work without authorization." (*Id.* at 14 (quoting *Kan. v. Garcia*, 589 U.S. 191, 196, 140 S.Ct. 791, 798, 206 L.Ed.2d 146 (2020)).

The Government responds by arguing that the Indictment sufficiently alleges violations of Section 1546(a) because Defendants allegedly presented (or conspired to present) false statements of their intent to abide by the terms of their B1/B2 visas when they applied for admission to the United States at a port of entry. (*See generally* Dkt. No. 170 ("[T]he Defendant alien's [criminal] acts in question are their applications for admission made by presenting their B1/B2 visas to an electronic reader at the port of entry, which populated an electronic application form in CBP systems with, inter alia, the

Defendant alien's intent to abide by the terms and conditions of those visas.")).  Further, the Government asserts that it is immaterial that the Indictment does not allege that the false statements were not made under oath, as that is not a requirement under paragraph four.  (*Id.* at 11–14).

To begin, the Indictment conflates the making and presenting clauses by alleging that Defendants "did knowingly *make* one or more *applications for admission* into the United States *containing a false statement*."  (Dkt. No. 47 at 6–9 (emphasis added)).  While the verb used for the criminal act is "make," in truth, the Indictment seems to allege that Defendants' crime was their presenting an application for admission.  The making clause criminalizes the making of a *false statement*, not an application.  Conversely, it is the presenting clause that criminalizes the presenting of an *application*.  This would indicate that the Indictment charges Defendants under the presenting clause, not the making clause.  Therefore, based on the above statutory interpretation, Defendants can be validly charged under paragraph four only if the Indictment alleges that they knowingly presented (or conspired to present) an application, affidavit, or other written document containing a false statement with respect to a material fact.  Further, because the allegations arise from the presenting clause, it is immaterial whether the false statement was made under oath or penalty of perjury.  Regardless, the Indictment fails to state an offense under paragraph four.[8]

---

[8]  The Indictment would still fail to state an offense even if it alleged a violation of Section 1546(a)'s making clause.  As discussed above, *supra* (III)(B)(1), that clause requires the relevant false statement to have been made under oath or penalty of perjury.  Counts 7–15 do not allege this essential element, and thus, are inadequate.

The "applications" that were allegedly presented were not written documents.  As the Government admits in its Response, the supposed applications under paragraph four that Defendants "presented" were their attempts to enter the United States by scanning their visas at a port of entry.  (Dkt. No. 170 at 4).  A physical attempt to enter the United States is not a written "application" under paragraph four.  While it is possible that the B1/B2 visas Defendants presented could qualify as an "application . . . or other document required by the immigration laws or regulations," this does not rescue the Indictment. Defendants are not charged with presenting visas that contain a false statement, they are charged with physically presenting themselves as applicants for admission with visas whose use carried with them an implied understanding that Defendants would abide by their terms (including that Defendants were barred from working in the United States). The text of the presenting clause does not criminalize this conduct.  The Court cannot enlarge paragraph four's scope by holding otherwise.  *See Jabateh*, 974 F.3d at 292 ("After all, only the words on the page constitute the law adopted by Congress and approved by the President.  If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process." (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 654–665, 140 S.Ct. 1731, 1738, 207 L.Ed.2d 218 (2020)).[9]

---

[9]     The presenting clause also criminalizes presenting an application "which fails to contain any reasonable basis in law or fact."  18 U.S.C. § 1546(a).  However, the Indictment still fails to state an offense under this language because it does not allege that Defendants obtained their visas through fraud or that the visas were otherwise invalid or lacking a basis in law or fact. According to the Government, it was Defendants' attempt to physically enter the United States

(continue)

As a result, there must be some other written document containing a false statement that Defendants presented for Counts 7–15 to be valid. The Government claims that Defendants did present a written application containing a false statement because the CBP system auto-populated an electronic application form when Defendants scanned their visas at the port of entry. (Dkt. No. 170 at 4). This electronic application included a statement that Defendants intended to abide by the terms of their visas. (*Id*.). The Court is unconvinced, however, that such electronic forms were presented as understood in Section 1546(a).

Defendants themselves did not present these forms; they were automatically created by the CBP system. Defendants' only role in their creation was the scanning of their visas, which did not contain the alleged false statement at issue. The commonly understood definition of "present" at the time the presenting clause was added to Section 1546(a) in 1952 meant "to give or offer." H.W. Fowler & F.G. Fowler, The Concise Oxford Dictionary of Current English 650–51 (7th ed. 1919) (defining "present" as meaning to "offer," "suggest," "bring formally under notice," or "submit"); N. Webster, An American Dictionary of the English Language 636 (New York, White & Sheffield 1841) (defining "present" as meaning "to give" and "to exhibit to view or notice"); *see also* Black's Law Dictionary 934 (2d ed. 1910) (defining "present" in the law of negotiable instruments as "to tender or offer"). Defendants did not give or submit the electronic forms to CBP when they applied for admission. As the Government admits in its

---

that lacked a basis in law or fact, not Defendants' applications for the visas themselves. (*See generally* Dkt. No. 170).

Response, Defendants are charged because they "present[ed] their B1/B2 visas." (Dkt. No. 170 at 4). The Indictment does not allege—and the Government does not assert—that Defendants approached a port of entry to apply for admission and offered, submitted, or gave any other written documents that contained a statement that they intended to abide by the terms of their visas.

Moreover, it is less than clear that Defendants *knowingly* presented these electronic forms under the Government's theory when Defendants were not the ones that filled them out. The above-mentioned definitions would suggest that presenting, as understood in 1952, is a conscious or purposeful act. The Indictment does not allege that Defendants were aware that such a form would be auto-populated by a computer system when they scanned their visas or that they were aware that the form contained a statement that they agreed to abide by the terms of their visas. Of course, Defendants likely had an understanding that it would be unlawful not to abide by these terms, but that is not the same as affirmatively stating that they would not do so. Without an allegation that Defendants presented a written document containing a false statement when they approached a port of entry to apply for admission, the Indictment fails to allege a violation of Section 1546(a)'s paragraph four.[10] The Court therefore concludes that Counts 7–15 must be dismissed for failure to state an offense.

_____

[10] The fact that the Indictment cites Section 1546(a) is not enough to state an offense. *United States v. Conley*, 349 F.3d 837, 840 n.2 (5th Cir. 2003) ("[A] statutory citation, standing alone, cannot substitute for including an element of the crime in an indictment." (quoting *United States v. Cabrera-Teran*, 168 F.3d 141, 147 (5th Cir. 1999))). The facts alleged in Counts 7–15 do not constitute a violation of Section 1546(a), and therefore, those Counts fail to allege an essential element of the offense.

## C.    COUNT 16

As with Counts 2–6, the Mendoza-Martinezes and Aleman-Ramirez argue that Count 16—charging them with violating 8 U.S.C. §§ 1324(a)(1)(A), 1324a(a)(2), and 1323a(f)(1)—is overly vague and lacking in specificity.  As a result, Defendants claim they are unable to formulate an "understanding about the crime they are facing, which the Fifth Circuit has found essential to a valid indictment."  (Dkt. No. 156 at 9–10 (citing *United States v. Chappell*, 6 F.3d 1095 (5th Cir. 1993)); (Dkt. No. 165 at 8–9); *see also* (Dkt. No. 161 at 9–10).  Defendant Jenith Mendoza Martinez also argues that because the Indictment does not allege that she (or any other Defendant) was the person who actually hired an unauthorized alien, she cannot be charged under Section 1324a(a)(2), which makes it a crime to continue employing an alien "after hiring [them] for employment in accordance with paragraph (1)."  (Dkt. No. 161 at 10 (citing 8 U.S.C. § 1324a(a)(2))).  Specifically, because Count 16 alleges that Defendants "engaged in a pattern or practice of hiring for employment *or* continuing the employment of . . . one or more aliens," (Dkt. No. 70 at 9 (emphasis added)), it attempts to criminalize continuing to employ an alien without being the individual that actually hired them as required under 8 U.S.C. § 1324a(a)(2), (Dkt. No. 161 at 10).

First, the Court has already addressed Defendants' argument that an indictment lacks specificity when it merely restates statutory language and fails to include a factual predicate.  *See supra* (III)(A) (quoting *Moody*, 923 F.2d at 351).  As such, Defendants' argument in this regard fails.

Next, the Court is unconvinced by Defendant Jenith Mendoza-Martinez's argument that Count 16 fails to state an offense. While the Indictment does allege that Defendants "engaged in a pattern or practice of hiring for employment *or* continuing the employment of" unauthorized aliens, the Court does not read this to allege that Defendants either hired aliens for employment or continued the employment of aliens they did not hire themselves, as Defendants claim. Given that Count 16 lists both Section 1324a(a)(1)(A) and (a)(2), the Indictment is best read to charge Defendants with violating either Section 1324a(a)(1)(A) or (a)(2).[11] It is true that a necessary element of Section 1324a(a)(2) is that the accused continued employing an unauthorized alien "*after* hiring [that] alien." 8 U.S.C. § 1324a(a)(2) (emphasis added). Despite not directly stating this element, however, a practical reading of Count 16 leads to the conclusion that the Indictment incorporated this element by also alleging a violation of Section 1324a(a)(1)(A), a statute that criminalizes the hiring of unauthorized aliens. *See* Wright & Miller's Federal Practice and Procedure, Civil § 126 ("'[P]ractical, not technical, considerations govern' a court's review of an indictment." (quoting *United States v. Evans*, 892 F.3d 692, 712 (5th Cir. 2018) (quotation cleaned up))); *see also United States v. Rainey*, 757 F.3d 234, 247 (5th Cir. 2014) ("[A]n exact recitation of an element of the charged crime is not required, provided the indictment as a whole 'fairly imports' the element." (quoting *United States v. Harms*, 442 F.3d 367, 372 (5th Cir. 2006))). Given this, the Court rejects

---

[11]    Count 16 also charges the Mendoza-Martinezes and Aleman-Ramirez with violating Section 1324a(f)(1). However, that Section merely imposes a fine for violations of Sections 1324(a)(1)(A) and (a)(2).

Defendant Jenith Mendoza-Martinez's argument that the Indictment fails to state an offense under Section 1324a(a)(2).

Defendants' Motions to Dismiss Count 16 are therefore denied. However, because Count 16 raises a duplicity issue, the Court orders the Government to elect which charge within that Count it intends to rely on.[12]

## IV. CONCLUSION

For the above reasons, the Court **DENIES** the Motions to Dismiss as to Counts 1–6 and 16, **GRANTS** the Motions as to Counts 7–15, and **ORDERS** the Government to elect whether it intends to rely on 8 U.S.C. § 1324a(a)(1)(A) or (a)(2) for Count 16.

It is SO ORDERED.

Signed on February 25, 2026.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE

---

[12] *See United States v. Miller*, 520 F.3d 504, 512 (5th Cir. 2008) ("Duplicity occurs when a single count in an indictment contains two or more distinct offenses."). A duplicitous count in an indictment risks, among other concerns, the lack of adequate notice of the nature of the charges against the defendant. *Id.* at 513 n.16. To receive relief from a duplicitous indictment, the defendant must be prejudiced by this. *Id.* at 512–13. "The proper remedy for a duplicitous indictment 'is to require the government to elect upon which charge contained in the count it will rely.'" *Medel-Guadalupe v. United States*, No. 1:22-CV-00038, 2022 WL 1308521, at *4 (S.D. Tex. Apr. 5, 2022) (quoting *United States v. McDermot*, 58 F.3d 636, 636 n.6 (5th Cir. 1995)); *see also United States v. Gallegos*, No. 1:22-CR-00710-MLG, 2023 WL 8477958, at *3 (D.N.M. Dec. 7, 2023) (ordering the Government to resolve a duplicity issue by electing a single charge and superseding the indictment with its choice). Because the Indictment attempts to charge multiple crimes within a single count, Defendants are not given adequate notice of the charges against them. The Government must clarify this ambiguity.